1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

DANIEL L. SMITH,

NO. C17-5292-JPD

9

Plaintiff,

10

v.

11

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

ORDER REVERSING AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS

12

Defendant.

13

14          Plaintiff Daniel L. Smith appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") which denied his applications for

16   Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under

17   Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a

18   hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the

19   Commissioner's decision is REVERSED and REMANDED for further administrative

20   proceedings.

21                    I.          FACTS AND PROCEDURAL HISTORY

22          At the time of the administrative hearing, plaintiff was a twenty-four year old man

23   with a high school education. Administrative Record ("AR") at 50, 151. Plaintiff

24   testified that he was in special education courses in school. AR at 50. Plaintiff received

ORDER - 1

SSI disability benefits as a child, which ceased when he turned eighteen. Dkt. 12 at 2. After high school, he enrolled with the Washington State Division of Vocational Rehabilitation ("DVR"), which placed him in three jobs: Walmart courtesy associate, shopping cart wrangler, and housekeeper. These work attempts were all ultimately unsuccessful. AR at 31. In November 2013, DVR determined that plaintiff is "unemployable in competitive employment" due to the combination of his physical impairments and intellectual limitations, including "the inability to do any standing and [his] serious limitations in reading, spelling and math[.]" AR at 420. Plaintiff was last gainfully employed in 2013 performing janitorial duties at a mall in Federal Way. AR at 51.[1]

On October 25, 2013, plaintiff filed a claim for SSI payments and DIB, alleging an onset date of July 10, 2012. AR at 16, 294-311.[2] Plaintiff asserts that he is disabled due to an intellectual disorder, bilateral club feet, severe generalized anxiety disorder, adjustment disorder, learning disorder, left ankle derangement, left pes cavus, obesity, and major depressive disorder. AR at 19, 670.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 132, 150-52, 169. Plaintiff requested a hearing, which took place on May 20, 2015. AR at 44-91. On August 27, 2015, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 13-33. Plaintiff's request for review was denied by the Appeals Council, AR at 1-7, making the ALJ's

---

[1] Plaintiff also testified that he worked for "a day and a half" as a warehouse worker at REI. AR at 52, 74.

[2] Plaintiff's date last insured is July 30, 2014. To be eligible for child disability benefits, plaintiff must establish that his disability began prior to his 22nd birthday, which predated his alleged onset date.

ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On April 26, 2017, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

As the claimant, Mr. Smith bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial

gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[3]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099,

---

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

1100. If the Commissioner finds the claimant is unable to perform other work, then the

claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On August 27, 2015, the ALJ issued a decision finding the following:

1.      The claimant meets the insured status requirements of the Social
        Security Act through June 30, 2014.

2.      Born on XXXXX, 1990, the claimant had not attained age 22 as
        of July 10, 2012, the alleged onset date. [4]

3.      The claimant has not engaged in substantial gainful activity since
        July 10, 2012, the alleged onset date.

4.      Prior to attaining age 22, and until the present day, the claimant
        had and has the following severe impairments: generalized
        anxiety disorder, mild intellectual disability, history of ADHD,
        history of specific learning disability, adjustment disorder,
        learning disorder, rule out cognitive disorder, bilateral club feet,
        left ankle derangement, left pes cavus, and obesity.

5.      Prior to attaining age 22, and until the present day, the claimant
        did not and does not have an impairment or combination of
        impairments that meets or medically equals the severity of one of
        the listed impairments in 20 CFR Part 404, Subpart P, Appendix
        1.

6.      After careful consideration of the entire record, the undersigned
        finds that, prior to attaining age 22 and until the present day, the
        claimant has the residual functional capacity to perform light
        work, as defined in 20 CFR 404.1567(b). and 416.967(b)., that
        does not require standing or walking more than 30 minutes at a
        time or more than two hours total during a workday; that does
        not require more than occasional balancing, stooping, crouching,
        or climbing of ramps or stairs; that does not require more than
        frequent kneeling or crawling; that does not require climbing of
        ladders, ropes, or scaffolds; and that is low stress meaning it does
        not require exposure to hazards such as open machinery or
        unprotected heights, it does not require concentrated exposure to
        vibration, it consists of simple, routine tasks, and it does not
        require more than occasional adaption to changes.

---

[4] The actual date is deleted in accordance with Local Rule CR 5.2, W.D.
Washington.

7.      The claimant has no past relevant work.

8.      The claimant was born on XXXXX, 1990 and was 21 years old,
        which is defined as a younger individual age 18-49, on the
        alleged disability onset date.

9.      The claimant has at least a high school education and is able to
        communicate in English.

10.     Transferability of job skills is not an issue because the claimant
        does not have past relevant work.

11.     Prior to attaining age 22, and until the present day, considering
        the claimant's age, education, work experience, and residual
        functional capacity, there are jobs that exist in significant
        numbers in the national economy that the claimant can perform.

12.     The claimant has not been under a disability, as defined in the
        Social Security Act, from July 10, 2012, through the date of this
        decision.

13.     The claimant has not been under a disability, as defined in the
        Social Security Act, at any time prior to XXXXX, 2012, the date
        he attained age 22.

AR at 18-32.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.      Did the ALJ err in rejecting the "other source" opinion of Rickey
        McDonald, LMHC, at DVR that plaintiff is unemployable?

2.      Did the ALJ err in evaluating the medical opinion evidence?

3.      Did the ALJ err at step three by using the highest, rather than the lowest,
        IQ scores in the record?

4.      Did the ALJ fail to provide clear and convincing reasons for finding
        plaintiff's testimony not credible?

5.      Did the ALJ fail to provide germane reasons for rejecting the lay witness
        testimony of plaintiff's father and grandmother?

Dkt. 12 at 1; Dkt. 13 at 1.

ORDER - 7

# VII.    DISCUSSION

A.    The ALJ Failed to Provide a Germane Reason for Rejecting the "Other Source" Opinion of Rickey McDonald, LMHC at DVR

DVR provided vocational rehabilitation services to plaintiff from June 2010 to November 2013, including three job placements that were ultimately unsuccessful. On November 13, 2013, lead DVR vocational counselor Rickey McDonald, LMHC wrote a letter summarizing plaintiff's failed work attempts and further explaining that plaintiff's case was closed for the following reasons:

> You were unable to continue [working as a housekeeping worker] because of problems with your foot and the resulting order from the Dr. [Carlson] that you are no longer able to do any job that requires any standing. After that you and I had a meeting and we discussed your physical limitations related to your foot issue and your cognitive limitations resulting from the mild mental retardation. The inability to do any standing and your serious limitations in reading, spelling and math caused us to determine that your case with DVR should be closed. It is clear that we will be unable to reasonably find employment that does not require a significant amount of standing and does not require reading, spelling, math and other cognitive skills exceeding your abilities. Because of this we believe you are not employable in competitive employment and we recommend that you apply for SSI.

AR at 420.

The ALJ considered Mr. McDonald's "other source" statement as required by SSR 06-3p and the social security regulations,[5] as a decision by another governmental agency regarding whether plaintiff is disabled based on their rules. However, the ALJ assigned Mr. McDonald's opinion "little weight because whether they were able to find him employment is a different analysis than whether there are occupations he could perform in the national economy." AR at 28. The ALJ pointed out that although plaintiff is "quite limited," "whether he would be hired is not relevant in the disability analysis . . .

---

[5] SSR 06-03p was rescinded effective March 27, 2017. However, it was in effect at the time of the ALJ's decision.

[and] whether a claimant is disabled is an issue reserved to the Commissioner." AR at 28. In addition, the ALJ found that "Dr. Washburn had these opinions to consider as well as other information, noted the claimant would have difficulty finding a job on his own, but also that he had the capability to perform certain kinds of unskilled work." AR at 28.

Although the ALJ is correct that Mr. McDonald's opinion about plaintiff's employability is not binding on the ALJ, because the question of whether a claimant is disabled under the social security law is reserved to the Commissioner, that is true of any opinion issued by another governmental agency. The ALJ should explain the consideration given to these another agency's decision that a claimant is not disabled, and such consideration should consist of more than simply rejecting the decision by virtue of the fact that it is non-binding. Here, the ALJ indicated that he was affording greater weight to Dr. Washburn's opinion, who "had these [DVR] opinions to consider as well as other information, [and] noted the claimant would have difficulty finding a job on his own, but also that he had the capability to perform certain kinds of unskilled work." AR at 28.

As plaintiff argues, however, the ALJ's summary of Dr. Washburn's report to rebut the vocational evidence appears inaccurate. AR at 28. Dr. Washburn's opinion, when read in context, appears to express agreement with Mr. McDonald's conclusion that plaintiff's combination of impairments rendered him unemployable:

> Mr. Smith has had the benefit of DVR services over a period of several years. Employment opportunities arranged for him appear to have been appropriate for his level of cognitive functioning. He appears to have been more or less successful in understanding and carrying out his assigned duties until his feet became intolerably sore and painful. DVR has closed his case and considers him to be unemployable.

Employment opportunities at Mr. Smith's ability level, that do not require walking and/or standing, as a requirement of the job, appear to be rather limited. It is likely that DVR considered and rejected a search for jobs better suited to his physical limitations. It is unlikely that Mr. Smith has the ability to conduct his own job search. The possibility that further surgery would significantly increase his mobility is unknown.

Cognitive Functioning: The result of current testing indicates that Mr. Smith's cognitive functioning, including memory ability, is at a borderline level. Cognitive ability at this level, is adequate to perform unskilled work and with training, some routine and repetitive semiskilled work. Employment at this skill level typically requires the ability to walk, stand, lift and carry weight. Mr. Smith's level of cognitive functioning is such that he does not have the cognitive skills needed to find employment suited to his pattern of strength and weaknesses.

Medical Source Statement: Mr. Smith does not appear to have the level of cognitive ability needed to find, on his own, full time, gainful employment that is compatible with his limited physical mobility. DVR has concluded that Mr. Smith is unemployable.

AR at 694-95.

The Court finds that without more, inconsistency with Dr. Washburn's medical opinion was not a germane reason for the ALJ to reject Mr. McDonald's assessment. As discussed below, the ALJ made several errors in evaluating the medical opinions evidence in this case. On remand, the ALJ should also reevaluate Mr. McDonald's assessment, and provide a valid reason for rejecting his vocational opinion, if appropriate.

B.      The ALJ Erred in Evaluating the Medical Opinion Evidence

       *1.      Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

*Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d821, 830 (9th Cir. 1995).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent

with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

2002); *Orn*, 495 F.3d at 632-33.

>    2.    *Robert Carlson, M.D., Byron Hutchinson, D.P.M, and*
>          *Russell Fario, D.O.*

Plaintiff argues that the ALJ's decision is internally inconsistent because the ALJ's

finding that plaintiff can perform light level work and therefore stand/walk 25% of the workday,

AR at 23, is inconsistent with his adoption of the opinions of Dr. Carlson, Dr. Faria, and Dr.

Hutchinson.  The ALJ stated that he gave these medical opinions "great weight."  Specifically,

the ALJ noted the following with respect to each of these physicians' opinions:

> Dr. Carlson opined in October 2013 that the claimant was able to perform seated work.  He stated that the claimant was "certainly able to work but really only in a sedentary capacity.  He stated, "I do not consider him disabled but certainly impaired on a permanent basis."  The undersigned assigns little weight to Dr. Carlson's opinion about the degree to which the claimant's learning disability interfered with his ability to work because Dr. Carlson is an orthopedist and not a mental health professional.  The undersigned assigns more weight to Dr. Carlson's opinions regarding the claimant's physical ability to perform at least seated work because it is consistent with evidence as a whole, which shows despite the claimant's foot deformities, he is otherwise able to function without significant physical impairment.  Dr. Carlson is an orthopedic specialist, which adds to the persuasiveness of his opinion regarding the claimant's ability to function.

AR at 27-28.

> In September 2014, Byron Hutchinson, D.P.M., opined that the claimant was limited to performing sedentary work and that these limitations would persist for six to nine months.  The undersigned assigns this opinion great weight as it is consistent with the most recent opinion from the physical consultative exam, which shows that the claimant is able to perform work without prolonged walking and standing.  Furthermore, this opinion was issued within the last year, and by a specialist.

AR at 29.

> In March 2015, Dr. Faria opined following the physical consultative exam that the claimant . . . should avoid prolonged standing and walking due to history of clubfoot and surgical repair bilaterally . . . The undersigned assigns this

ORDER - 12

opinion great weight because it was issued by an acceptable medical source
within the last year following a complete physical exam. This opinion is
consistent with evidence as a whole, as well as consistent with opinions issued
by specialists, which show that the claimant is able to physically perform work
as long as it does not require prolonged standing and walking.

AR at 30.

Despite these physicians' opinions that plaintiff is limited to sedentary work (or likely even more limited than the the definition of sedentary work as defined by the regulations because they opined he can perform only "seated work" and be on his feet for only "brief periods"), the ALJ's RFC assessment in this case only limited plaintiff to "light" work which allows for prolonged standing/walking (30 minutes at a time) for 25% of the workday. AR at 23. The ALJ did not explain why he only limited to plaintiff to light, as opposed to sedentary, work, or explain how a light work limitation is consistent with the doctors' opinions that plaintiff can only perform "seated work." Similarly, the ALJ erred by failing to discuss the opinion of a fourth doctor, Dr. Bourdeau, who also limited plaintiff to sedentary work on a permanent basis. AR at 661. *See Lingenfelter v. Astrue*, 504 F.3d 1028 fn.10 (9th Cir. 2007) (providing that it was error to discount a doctor's opinion by not mentioning the opinion and simply making findings contrary to it). The ALJ erred by stating that he was assigning these physicians' opinions great weight, and then adopting an inconsistent RFC.

The Commissioner asserts that even if the Court were to find that the ALJ erred in evaluating these physicians' opinions, any such error was harmless because the vocational expert and ALJ identified three sedentary type jobs plaintiff could perform. Dkt. 13 at 9. However, as noted above, it appears that these physicians may have considered plaintiff to be even more limited than the definition of "sedentary" in the regulations, because they limited him to only "seated work" and being on his feet briefly. AR at 650, 719. It is therefore not clear that the VE's testimony, which was based on the ALJ's hypothetical question, adequately

took their opinions into account and that the ALJ's errors were harmless. Moreover, in light of the other errors made by the ALJ in evaluating the evidence in this case, the ALJ should re-evaluate these opinions on remand.

### 3. Enid Griffin, Psy.D. and Dr. Washburn

Dr. Griffin performed a consultative examination for DHS in February 2014. AR at 668-70. Dr. Griffin diagnosed plaintiff with major depressive disorder (severe), learning disorder NOS, and rule out cognitive disorder and attention-deficit hyperactivity disorder. AR at 670. In Dr. Griffin's medical source statement, she opined as follows:

> There are concerns over some mild memory issues and given his significant depressive symptoms, it is likely he would not be able to handle simple tasks such as found with training and/or employment at this time. Given the above, it is recommended he obtain a case manager and protective payee. Furthermore, he has been given a past diagnosis of Cognitive Disorder NOS in 2009. Due to differential diagnosis issues, it is recommended he obtain an updated full neuropsychological evaluation to assist with further recommendations/prognosis. At this time his ability to reason and adapt to situations is limited. He struggles with taking care of his daily living activities mainly due to his depressive symptoms. Overall, from a mental health standpoint, it is likely he would not be successful with training and/or employment until his mental health symptoms have significantly decreased.

AR at 670.

The ALJ gave Dr. Griffin's opinion little weight because plaintiff "did not undergo as thorough testing during this exam as compared to other psychological exams during the timeframes relevant to this application. Dr. Griffin opined that there was a need for a full neuropsychological evaluation, indicating her opinions were not fully informed and preliminary." AR at 28. The ALJ noted that Dr. Washburn obtained "this additional evaluation . . . and his opinions and conclusions are better informed having both her examination as well as his own more extensive testing." AR at 28.

1    The ALJ's rationale failed to articulate what aspect of Dr. Griffin's assessment the ALJ

2    believed to have been contradicted by Dr. Washburn's report.  Moreover, although the ALJ

3    asserted that he preferred Dr. Washburn's report because Dr. Washburn had the benefit of the

4    neuropsychological testing, unlike Dr. Griffin, the ALJ also declined to fully adopt Dr.

5    Washburn's opinion.  For example, the ALJ rejected Dr. Washburn's conclusion that plaintiff

6    "did not have the cognitive skills needed to find employment suited to his pattern of strengths

7    and weaknesses," AR at 28, which seems consistent with Dr. Griffin's opinion.  Accordingly,

8    inconsistency between Dr. Griffin's opinion and Dr. Washburn's opinion was not a specific and

9    legitimate reason for the ALJ to reject Dr. Griffin's conclusions.

10    As noted above, Dr. Washburn conducted a March 2014 neuropsychological evaluation

11    that included a diagnostic interview with mental status evaluation, Wechsler Memory Scale,

12    Wechsler Adult Intelligence Scale, and Trail Making Test.  AR at 690-95.  Dr. Washburn

13    concluded,

> Cognitive Functioning:  The result of current testing indicates that Mr. Smith's cognitive functioning, including memory ability, is at a borderline level. Cognitive ability at this level, is adequate to perform unskilled work and with training, some routine and repetitive semiskilled work.  Employment at this skill level typically requires the ability to walk, stand, lift and carry weight.  Mr. Smith's level of cognitive functioning is such that he does not have the cognitive skills needed to find employment suited to his pattern of strengths and weaknesses.
>
> Medical Source Statement:  Mr. Smith does not appear to have the level of cognitive ability needed to find, on his own, full time, gainful employment that is compatible with his limited physical mobility.  DVR has concluded that Mr. Smith is unemployable.

21    AR at 695.

22    The ALJ rejected Dr. Washburn's opinion that "Mr. Smith's level of cognitive

23    functioning is such that he does not have the cognitive skills needed to find employment suited to

24    his pattern of strengths and weaknesses," because the ALJ found that "[t]his portion of the

opinion is vague as to whether Dr. Washburn refers to the claimant's physical or mental strengths and weaknesses." AR at 28. The ALJ then stated that he gave "this opinion some weight because Dr. Washburn attached the presumption that unskilled work requires physical abilities beyond what the claimant possesses. As Dr. Washburn is a Ph.D. rather than an M.D., he is not qualified to render physical vocational opinions." AR at 28-29. The ALJ gave "more weight to the portion of this opinion that focuses on the claimant's ability to perform unskilled work because it is most consistent with the evidence as a whole including psychological testing done contemporaneously with the issuance of this opinion." AR at 29.

The ALJ's reasons for rejecting this aspect of Dr. Washburn's opinion are not specific, legitimate, or supported by substantial evidence. The ALJ seems to have adopted only the portions of Dr. Washburn's opinion that suggested plaintiff could sustain unskilled work, while ignoring his overall conclusions that took the evidence from DVR into account. Specifically, Dr. Washburn's opinion suggests that neither plaintiff's intellectual disability, nor his limitation to sedentary work, alone rendered him unable to find suitable employment. Rather, as plaintiff's work attempts at DVR demonstrates, it is the unique combination of plaintiff's impairments that rendered plaintiff unemployable. Dr. Washburn was specifically provided with the evidence from DVR by the SSA to be reviewed prior to the psychological evaluation. AR at 690-91. Thus, Dr. Washburn did not provide an opinion regarding plaintiff's physical limitations that was outside his area of expertise, but instead assessed plaintiff's degree of cognitive impairment and how it would affect his ability to perform work in the vocational circumstances described in the DVR report. On remand, the ALJ should reassess Dr. Washburn's opinion, as well as Dr. Griffin's conclusions.

C.  On Remand, the ALJ Shall Re-Evaluate Whether Plaintiff Meets Listing 12.05(C) In Light of Plaintiff's IQ Score of 67

Plaintiff argues that the ALJ in this case erred by failing to discuss plaintiff's IQ scores that appear to meet the intellectual criteria for Listing 12.05(C), as it existed at the time of the ALJ's decision. Specifically, plaintiff was in special education all through school, and he received an IQ score of 67 at Mt. Vernon High School (his last school IQ test). AR at 540. Specifically, the school records provide that "over the years, [plaintiff] has been evaluated several times . . . and his IQ scores ranged from Low average to Mentally retarded. His last IQ was 67 and he demonstrated commensurate delays in adaptive behavior, skills, academics, etc. There was no reason to conduct further IQ testing." AR at 540.

To satisfy Listing 12.05(C) (Intellectual Disability), a claimant must satisfy the following three requirements:

(1)  Significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of impairment before age 22;

(2)  A valid verbal, performance, or full scale IQ score of 60 to 70; and

(3)  A physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C; *Kennedy v. Colvin*, 738 F.3d 1172, 1175-76 (9th Cir. 2013).[6] Significantly, the regulations provide that "we use the lowest of these [IQ] scores

_____

[6] In recent revisions to the listings for mental disorders, effective January 17, 2017, the Social Security Administration (SSA) removed paragraph C from Listing 12.05. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). Revised Listing 12.05B requires: (1) either a full scale IQ of 70 or below or a full scale IQ of 71-75 with a verbal or performance IQ of 70 or below; (2) significant deficits in adaptive functioning "currently manifested" by extreme limitation of one or marked limitation of two areas of mental functioning; and (3) evidence about "current intellectual and adaptive functioning" and the history of the disorder demonstrates or supports the conclusion it began prior to age 22. 20 C.F.R. pt. 404,

in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(D)(6)(c).  Courts in

the Ninth Circuit have also consistently held that where multiple or conflicting IQ scores are

available, the operative score for purposes of determining whether a claimant's impairments

meet or equal the 12.05 listing is the lowest "valid verbal, performance, or full scale IQ" score

the claimant has received. *See Fanning v. Bowen,* 827 F.2d 631, 633 (9th Cir.1987) (providing

that where a claimant took IQ tests in both 1982 and 1983, higher scores obtained in 1983 did

not render lower scores obtained in 1982 invalid for purposes of listing 12.05(C)); *Ray v.*

*Chater,* 934 F.Supp. 347, 350 (N.D.Cal.1996) (providing that "it can be inferred that when

multiple I.Q. scores are available the Regulations prefer the lowest score."). *See also* 20 C.F.R.

Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) ("In cases where more than one IQ is customarily

derived from the test administered, e.g., where verbal, performance, and full scale IQs are

provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.").

Here, it is not clear that the ALJ was even aware that plaintiff previously received an IQ

score of 67, as he did not acknowledge it in his written decision.  In his discussion of Listing

12.05(C), the ALJ did acknowledge that plaintiff satisfied the final requirement of the listing

because he has several other severe impairments in the form of "a foot disorder and mental

impairments."  AR at 23.  These other severe impairments would satisfy the Listing

requirement of "an additional and significant work-related limitation of function."  *See*

*Fanning v. Bowen,* 827 F.2d 631, 633 n.3 (9th Cir. 1986) (holding that an impairment satisfies

this requirement when its impact on a claimant's ability to perform basic work activities is

more than slight or minimal, and a step 2 finding of a severe impairment satisfies this test).

---

subpt. P, app. 1 § 12.05B.  *See also* Listing 12.00H(1).  The Court presumes that former
Listing 12.05 continues to apply to plaintiff's case, because plaintiff's case was pending
when the regulatory change took effect.

Plaintiff's school records, which are discussed above, also show that plaintiff satisfies the third requirement. He was in special education classes throughout school, and even received SSI benefits as a minor. AR at 540. Thus, the record indicates that plaintiff has had subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., onset before age 22. With respect to plaintiff's IQ scores, the ALJ noted only that "he scored as follows on the Weschler Adult Intelligence Scale IV: full scale 72, verbal comprehension 74, perceptual reasoning 77, working memory 71, and processing speed 86." AR at 23. Thus, it appears that the only reason the ALJ concluded that plaintiff did not meet the Listing criteria is because the ALJ believed his IQ scores were too high.

On remand, the ALJ is directed to re-evaluate whether plaintiff meets or equals Listing 12.05(C), and specifically discuss plaintiff's IQ score of 67 as part of his analysis. AR at 540. Although the Commissioner contends that the ALJ "logically used the more recent testing results obtained by Dr. Washburn in March 2015," this is a post hoc argument that was not made by the ALJ. The Court can evaluate the ALJ's decision only on the grounds articulated by the ALJ. Furthermore, ignoring plaintiff's lowest IQ score in favor of his higher scores appears to be inconsistent with the social security regulations and the law of this Circuit.

D. On Remand, the ALJ Should Re-Evaluate Plaintiff's Testimony and the Statements of Plaintiff's Father and Grandmother

The ALJ included a very limited discussion of plaintiff's credibility in this case, focused entirely upon his activities of daily living. AR at 26-27.[7] Specifically, the ALJ stated that his

---

[7] The Court was perplexed by the Commissioner's attempt to construe the ALJ's summary and discussion of the medical evidence, AR at 24-26, 27-30, and the lay evidence, AR at 30-31, as part of his credibility analysis. The Commissioner is mistaken,

"report of daily activity capabilities differed in the record and in his testimony, undermining the credibility of his reports generally." AR at 26. The ALJ found that plaintiff was "intellectually able to persist at work activities more or less successfully," and "past employment ended because of foot pain rather than mental health limitations." AR at 27. The ALJ also found that plaintiff's ability to spend most of his day playing videogames and learning to drive new routes after practicing with his father three or four times are "abilities . . . consistent with the ability to persist at low stress, simple, routine work, as further limited in the residual functional capacity assessment." AR at 27. With the possible exception of inconsistencies between plaintiff's testimony and his reports to medical providers, the Court does not find the ALJ's reasons for discounting plaintiff's testimony to be clear and convincing. The ALJ generally appears to ignore evidence that plaintiff's work attempts have been unsuccessful because of the combination of his mental limitations and foot impairment, which is what several doctors and DVR have found. The ALJ also fails to address the fact that if plaintiff requires excessive repetition before he can learn new simple tasks, this will provide a barrier to employment.

Because this case is being remanded for reconsideration of the medical evidence, and the Court has found that credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue remanded. Similarly, in this case the ALJ's analysis of plaintiff's father and grandmother's testimony was closely related to his analysis of the medical evidence (such as Dr. Washburn's opinion), and therefore the ALJ should also reconsider their testimony. AR at 30-31. On remand, the ALJ should reevaluate the medical evidence, plaintiff's testimony, and the lay witness evidence.

and her arguments amount to improper post hoc rationalizations the Court cannot consider.

## VIII. CONCLUSION

For the foregoing reasons, this case is REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.

DATED this 11th day of October, 2017.

_James P. Donohue_
JAMES P. DONOHUE
Chief United States Magistrate Judge